# Sansberry *v.* The State.

### *Embezzlement.*

(Decided June 19, 1912.   59 South. 540.)

*Embezzlement; Offense; Trustee or Agent.*—The evidence in this case examined and from it, it is held that the defendant had authority to sell the cotton, and as his receipts were payable in money, he was not guilty of the offense charged in the indictment.

APPEAL from Dale Circuit Court.

Heard before Hon. M. SOLLIE.

A. M. Sansberry was convicted of embezzlement, and he appeals. Reversed and remanded.

The indictment contained six counts, the first three charging the embezzlement of money belonging to the corporation named. The last three charged the embezzlement of 12,000 pounds of lint cotton of the value of $1,400, the personal property of the said company, which came into his possession by virtue of his employment as agent of such corporation. The fifth count alleges him as trustee, and the sixth count as bailee. The following charges were refused the defendant: "G. If the jury believe the evidence, they will find for the defendant as to the fourth count." H. Same as G as to the fifth count. I. Same as G as to the sixth count.

ESPY & FARMER, and H. L. MARTIN, for appellant. Counsel discuss the errors assigned, and insist that under the indictment and the evidence, the defendant was improperly convicted, and that, therefore, the court erred in refusing to give the charges requested by the defendant.—78 Ala. 34; 51 Am. St. Rep. 574; 98 Am. Dec. 149; 15 Cyc. 492; 129 Ala. 104; 88 Ala. 105; 10 A. & E. Enc. of Law, 1005; 7 Am. Dig. 2097; 51 Am. St. Rep. 571; 29 Ala. 208; 97 Ala. 45; 152 Ala. 60; 70 Ala. 13.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State.

DE GRAFFENRIED, J.—The defendant was indicted for and convicted of the crime of embezzlement.

The facts, so far as it is necessary for us to state them, are: That the Alabama Chemical Company, a corporation, sold a lot of commercial fertilizer to the defendant on credit. It was understood between the parties that the title to the goods was to remain in the Chemical Company until they were paid for. The defendant was a merchant, and the goods were delivered

to him with the understanding that he was to.sell them in the course of his business as a merchant, but that as they were sold the proceeds were to be the property of the Chemical Company. If any sales were made, the cash was to be the Chemical Company's cash and was to be kept separate from the other funds of the defendant and to be at once remitted to the company. If credit sales were made, the notes and accounts evidencing such sales were to be the property of the Chemical Company, and, if any collections were made by the defendant on such notes or accounts, the money collected was to be the property of the Chemical Company and was to be remitted by the defendant to that company.

It appears that the defendant bought from the Chemical Company, under the above contract, more than $3,000 worth of the fertilizers, and that he sold them to his customers on credit. Some of the sales of the fertilizer were evidenced simply by open accounts, but many of the sales were evidenced by the notes which defendant took from the purchasers. The defendant seems to have given to the Chemical Company notes for his indebtedness, and as collateral security for the payment of said notes to have transferred a number of the above notes and accounts. Some time in August, 1910, the company returned to the defendant the said collaterals and obtained from him receipts which are in words and figures substantially as follows: "Trustees Receipt. Daleville, Ala., August 22, 1910. Received of Alabama Chemical Company for collection for its account the within described notes, accounts, mortgages and other evidences of debt due them. The Alabama Chemical Company hereby appoints A. M. Sansberry as their trustee to hold the within named notes, accounts, mortgages and other evidences of debt for collection for said company's account and proceeds of said collections to be

paid said company. When collection or payment of any kind is made, proceeds to be remitted to the Alabama Chemical Company, Montgomery, Alabama. (Here the notes and accounts are set out.) I, or we, accept above appointment of trustee for above notes, accounts, mortgages and other evidences of debt above enumerated, and as such trustee will collect said above notes, accounts, mortgages and other evidences of debt, and when collection of any kind is made, all proceeds of such collection, I, or we, bind ourselves to hold same at all times in trust, to be remitted to the Alabama Chemical Company, Montgomery, Ala. Sign here. A. M. Sansberry, Trustee."

It appears from the evidence that certainly a large number of the parties to whom the defendant sold the fertilizers were regular customers of the defendant; that, in addition to the fertilizers, they bought other articles and supplies from him during said year, all of which, along with the fertilizer, whether the sale of the fertilizer was evidenced by note or not, were charged in one general account against each of such customers. When the customers whose accounts were so situated paid the defendant money or delivered cotton to the defendant in payment of or as a credit upon their accounts, as a rule, according to the evidence, such payments were made for the purpose of being applied to the accounts generally, and not to the specific extinguishment of the debts for fertilizers. Some of the defendant's customers, however, made payments in money or in cotton with specific directions that the payments so made should be applied to their fertilizer debts. The defendant seems to have mingled the funds collected in payment of the fertilizer debts with his own funds, and all moneys collected by him were placed by him, in his own name, on deposit with a bank in Enterprise. Many

of the fertilizer notes and debts were paid by the debtors in cotton, which the defendant sold and the proceeds of which, along with all other money collected by him from other sources, were placed by him to his credit in said bank. The defendant seems to have paid the Chemical Company. about half of the amount due it by him. The balance of the debt remains unpaid, and in January, 1911, the defendant was adjudicated a bankrupt.

As the trial court, in its charge to the jury eliminated the first three counts of the indictment from the consideration of the jury, the indictment, so far as the present record is concerned, consists of the last three counts. These counts charge that the defendant embezzled or fraudulently converted to his own use about 12,000 pounds of lint cotton, of the value of about $1,400, the property of said Chemical Company.

When the true situation of the parties to the transaction out of which this prosecution arose is considered—when their relative rights, duties, obligations, and powers, as fixed by the real contract between them, are thoroughly understood—it is evident that the defendant, if the evidence in the case is to be believed, was not guilty of embezzling any of the cotton of the Alabama Chemical Company. The defendant owed the Chemical Company a debt to be paid, not in *cotton,* but in money. He received from the Chemical Company certain collaterals, with authority to collect for the company's benefit and remit the *money so collected.* It was not the expectation of the Chemical Company that the defendant would ship to it a bale of cotton which he might receive in payment of any of the collateral notes or accounts. Says the witness Adams, a witness for the state and an agent of the Chemical Company through whom it had many of its transactions with the defendant relative to this matter, "of course, it was understood

that he (defendant) would have to sell the cotton that he collected on the guano, in order that he could send the company the money." As above stated, the defendant's obligations to the Chemical Company were payable in *money*. The collaterals which the defendant received from the company were payable in *money,* and any cotton which was turned over to the defendant in discharge of such collaterals was to be sold by the defendant and the *money* so received was to be forwarded to the company.

The contract under which the Chemical Company shipped the fertilizers to the defendant is illustrative of the principles of law which govern the case. Under that contract the title to the fertilizers was to remain in the company. The defendant, however, had the power, under that contract, to sell the fertilizers. He was, however, upon a sale for *cash,* to remit the cash to the company. Suppose he had sold $100 worth of the fertilizer for cash and had fraudulently converted that cash to his own use. Could it be successfully contended that he would have been, under such circumstances, guilty of embezzling the fertilizers so sold? The question, it seems to us, carries with it is own answer. When the act itself is legal, the law will not inquire into the motive which prompted the act. In the present case there is not a scintilla of doubt about the proposition that the defendant possessed the right to sell the cotton.

If he was guilty of embezzlement, he was guilty of embezzling the proceeds of the cotton and not the cotton.—*Gray v. State,* 160 Ala. 107, 49 South. 678. Having the authority to sell the cotton, the defendant, *even if he sold it with the intent to fraudulently convert the proceeds to his own use, was not guilty of embezzling the cotton.*—*State v. Crosswhite,* 130 Mo. 358, 32 S. W. 991, 51 Am. St. Rep. 571.

[Hope v. The State.]

For the above reasons the trial court erred in refusing to give to the jury, at the written request of the defendant, charges G, H, and I.

There are a number of other questions presented by this record, but they may not again arise in this case, and we will not discuss them.

Reversed and remanded.