# Williams *v.* Va.-Car. Chem. Co.

*Bill for an Accounting.*

(Decided May 13, 1913. 62 South. 755.)

*Bankruptcy; Discharge; Debts; Exempt.*—Under the Bankruptcy Acts of July 1, 1878, a bankrupt was not released from liability by his discharge for a debt created by a collection of certain notes by him under an agreement reciting their receipt by him for collection as a trustee.

APPEAL from Elmore Chancery Court.

Heard before Hon. W. W. WHITESIDE.

Bill by the Virginia-Carolina Chemical Company against B. A. Williams, for an accounting, and to hold him as trustee in the collection of certain notes. Decree for complainant and respondent appeals. Affirmed.

·J. M. HOLLEY, for appellant. The discharge of the bankrupt was a discharge of all provable debts against him, except such as were reduced to judgment before the discharge.—17 A. B. R. 31; 19 A. B. R. 866; 12 A. B. R. 659; 22 A. B. R. 93; 195 U. S. 176. The filing of the claim against the bankrupt estate and receiving dividends thereon was a waiver of the security.—185 Fed. 976; 11 Am. Dig. sec. 364. The bill did not show a breach of duty nor a claim sounding in tort.—14 Am. Dec. Dig. sec. 426; 134 N. Y. Supp. 786; and the Bankruptcy Act.

THETFORD & MCKENZIE, for appellee. The contract between the parties created the relation of principal and agent, and that of trust and confidence, and a discharge of the bankrupt was not a discharge of the bankrupt as against this claim.—Sec. 17, Bankrupt Act, 1898; *Jackson v. State,* 2 Ala. App. 266; *Sandsbury v. State,* 5 Ala. App. 117.

MAYFIELD, J.—The bill is one for an accounting. It may be treated as one filed by a principal against his agent, or by a beneficiary against the trustee. The bill shows the relation between the parties to be that of principal and agent, though the written evidence thereof denominates the defendant as trustee. The contract certainly creates the relation of principal and agent, as well as that of trust and confidence. The instrument creating the relation between the parties, omitting the list of notes and mortgages delivered by the principal

to the agent for collection, reads as follows: "Montgomery, Ala., Aug. 11, 1911. The Virginia-Carolina Chemical Company, a corporation, hereby constitutes and appoints B. A. Williams, of Wetumpka, Ala., its trustee, for the express purpose of collecting the notes, mortgages and accounts hereinafter listed, and said company does hereby authorize and empower said trustee to cancel and surrender said notes and mortgages upon the payment of the same to him.  *  *  *  I, B. A. Williams, of Wetumpka, Ala., do hereby acknowledge receipt of the foregoing notes, mortgages and accounts, the same having been delivered to me as trustee of the Virginia-Carolina Chemical Company, and I hereby accept the trust hereinbefore created in me, and do bind myself, my heirs, executors and assigns to the strict performance of the same, holding myself ready to pay said Virginia-Carolina Chemical Company the proceeds of said notes, mortgages and account as collections shall be made by me, thereon, or upon demand made upon me therefor." The bill alleged that the trustee had collected moneys on these notes and mortgages referred to, and had failed to account therefor; and sought an accounting and a decree requiring the payment of the amount ascertained to be due the principal from the agent on that account. The answer practically admitted the material averments of the bill, but also alleged an indebtedness due from respondent to complainant as for fertilizers, and that the notes and mortgages referred to were collateral to secure this indebtedness; and set up respondent's discharge in bankruptcy as a defense.

The cause was submitted on the bill, the answer, and an agreed statement of facts as follows: "In order to obviate the necessity of introducing evidence in support of matters about which there is no dispute, it is agreed

by and between the parties to the above suit: First. That 'Exhibit A' which is attached to the bill of complaint and 'Exhibit A' which is attached to the answer of the defendant are true, full, and correct copies of the instruments of which they purport to be copies. That they may be treated by the court in all respects as if they were originals instead of copies. Second. That with the exception of the statement that defendant was granted a discharge from all debts which existed on the 27th day of May, 1912, all allegations of fact which are contained in the answer of the defendant are true. It being admitted that a discharge was granted to defendant, of which Exhibit B to the answer of defendant is a true copy. But the conclusion that said discharge covered all debts due by defendant on the date is not admitted by complainant. It being the intent of this agreement to submit to the court for adjudication the question as to whether or not the liability of defendant to complainant alleged in the bill and admitted in the answer was covered by said discharge." The chancellor rendered a decree in favor of complainant, from which the respondent prosecutes this appeal.

It is conceded that the sole question for decision by the chancellor and by us is whether or not the discharge of the defendant in bankruptcy was a defense to the suit.

We are of the opinion that the chancellor reached the correct conclusion in holding that the discharge in bankruptcy was not availing as a defense to this bill. It is contended by appellant that the decision in this case is ruled by that of *Crawford v. Burke,* 195 U. S. 176, at page 194, 25 Sup. Ct. 9, at page 13 (49 L. Ed. 147), and the cases cited therein and some following it. The decision in the above case is well stated in the last paragraph of the opinion as follows: "In the case

under consideration defendants purchased, under the instructions of the plaintiff, certain stocks and opened an account with him, charging him with commission and interest, and crediting him with amounts received as margins. Subsequently, and without the knowledge of the plaintiff, they sold these stocks, and thereby converted them to their own use. Without going into the details of the facts, it is evident that the plaintiff might have sued them in an action on contract charging them with the money advanced and with the value of the stock, or in an action of trover based upon their conversion. For reasons above given, we do not think that his election to sue in tort deprived his debt of its provable character, and that, as there is no evidence that the frauds perpetrated by the defendants were committed by them in an official or fiduciary capacity, plaintiff's claim against them was discharged by the proceedings in bankruptcy." That case is, we think, readily certainly distinguishable from this, in fact, it is expressly distinguished from cases like this, in the opinion above quoted. There is no doubt that the claim or demand here sought to be recovered was incurred while the defendant was acting in a fiduciary capacity, and that he is accountable for such as a trustee. In equity, if not in law, the money sought to be recovered in this case is the money of the plaintiff, and not that of the defendant. The defendant, under his agreement, collected it for the plaintiff, and not for himself.

The appellant relies upon section 17 of the Bankruptcy Act of 1898 as discharging the defendant, and this is the section of the act which the Supreme Court of the United States based its decision in the case above quoted from. That section reads in part as follows: "Sec. 17. A discharge in bankruptcy shall release the bankrupt from all of his provable debts, except such as

\*   \*   \*   (2) are judgments in actions for frauds, or obtaining property by false pretenses, or false representations, or for willful and malicious injuries to the property or person of another;   \*   \*   \*   or (4) were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity." The Supreme Court of the United States, in the opinion above referred to, says: "Why an ordinary claim for fraud should be released by the discharge while a judgment for fraud is not released is not altogether clear, although this distinction may have been created to avoid the necessity of going into conflicting evidence upon the subject of fraud; while in cases of judgments for frauds the judgment itself would be evidence of the fraudulent character of the claim. If a creditor has a claim against a debtor for goods sold which would ordinarily be covered by a discharge in bankruptcy, he is strongly tempted to allege, and, if possible, to prove that the goods were purchased under a misrepresentation of the assets of the buyer, and thus to make out a claim for fraud which would not be discharged in bankruptcy. It was probably this contingency which induced Congress to enact that an alleged fraud of this kind should be reduced to judgment before it could be set up in bar of a discharge. The intent of Congress in changing the language of the act of 1867 seems to have been to restore the act of 1841, which, as already observed, extended the benefits of the law to every debtor who had not been guilty of defalcation as a public officer or in a fiduciary capacity, the act of 1898 adding, however, to the excepted class those against whom a judgment for fraud had been obtained."—195 U. S. 191, 192, 25 Sup. Ct. 12, 13, 49 L. Ed. 147. Contracts or agreements similar to the one in question have been before this court and the Court

[Cloverdale Homes v. Town of Cloverdale.]

of Appeals frequently, for construction, most of them probably being in criminal cases, as for embezzlement; and none of these cases hold anything contrary to our holding in this case. The cases of *Jackson v. State,* 2 Ala. App. 226, 57 South. 110; and *Sansberry v. State,* 5 Ala. App. 117, 59 South. 340, cite and review a number of similar cases.

It follows that the decree of the chancellor is correct; and it is in all things affirmed.

Affirmed. All the Justices concur, except DOWDELL, C. J., not sitting.