STATE OF IOWA, Appellee, v. W. H. Fox, Appellant.

**EMBEZZLEMENT:**    Issues, Proof, and Variance.    A charge that an
accused embezzled a particular *article or thing* is not sustained by
proof that the accused lawfully sold the said article or thing and
embezzled the *proceeds.*

*Appeal from Cedar District Court.*—JOHN T. MOFFIT, Judge.

MAY 13, 1924.

THE defendant was convicted of the crime of embezzlement,
and appeals.—*Reversed.*

*Henry Negus* and *G. C. Hoover,* for appellant.

*Ben J. Gibson,* Attorney-general, *Maxwell O'Brien,* Assistant Attorney-general, and *Arthur Lund,* County Attorney, for appellee.

FAVILLE, J.—In March, 1921, appellant traded a farm in Van Buren County for a store in Cedar County. The former owner of the store had on hand some spreaders, which belonged to the Litchfield Manufacturing Company, of Waterloo. Shortly thereafter, a representative of the manufacturing company had an interview with appellant in regard to turning over the spreaders to appellant. As a result of the negotiations, a written contract was entered into between appellant and the Litchfield Company. The contract recites that certain spreaders were to be delivered to appellant, and contains the following recitals:

"For which the undersigned hereby expressly agrees to pay at the prices set forth and according to the terms and conditions enumerated herein. * * * It is expressly agreed that upon receipt of invoice and copy of bill of lading covering said goods, said second party will according to contract execute notes to the first party for the amount to be paid for said goods, according to the terms of this contract. Notes are not accepted as payment, but only as evidence of indebtedness."

Under this contract, nine spreaders were turned over to appellant, and appellant executed and delivered to the Litchfield Company his negotiable promissory note, due August 1, 1922, for $1,155, as provided in the contract.

When the spreaders were turned over to appellant, the Litchfield Company charged him with the sum of $1,155. When appellant's note was received, this account was balanced, and the company indorsed the note to its bank and received credit therefor at the bank.

Appellant sold seven of the spreaders, and made no remittance therefor. This was before the note became due. In the fore part of May, 1922, a representative of the Litchfield Company called on appellant for a settlement. Negotiations were carried on for a few days, but no settlement was effected for the spreaders that had been sold.

The State contends that, at the time of these negotiations, it was agreed that the two spreaders then on hand were to be surrendered to the Litchfield Company by appellant. Shortly after this, however, the appellant sold the two spreaders and reported the sales to the Litchfield Company, and the latter advised appellant that it was forwarding guaranty bonds to the purchasers for said two spreaders.

Appellant removed to Wisconsin, and subsequently the indictment in this case was found, charging appellant with embezzlement of the nine spreaders. The court withdrew from the consideration of the jury all question as to the seven spreaders sold by appellant prior to the transaction in May, 1922, when it is claimed the two spreaders were to be turned over to the Litchfield Company, and the cause was submitted to the jury on the question of embezzlement of said two spreaders.

The appellant, at the proper time, moved for a directed verdict. He challenges the sufficiency of the evidence to sustain the conviction.

It was evidently the view of the trial court that there was evidence that the contract was terminated on May 6, 1922, and that thereafter, appellant had no right to sell the two spreaders, under the contract.

Just what the arrangement was between the parties at the time is not exactly clear from the record. Representatives of the manufacturing company attempted to make a settlement with appellant for the spreaders that had been sold. It is contended that appellant's right to sell the two spreaders on hand was terminated, but that, under the contract, the duty still rested upon appellant to return the spreaders to the manufacturing company.

It appears that a replevin suit was threatened by the representatives of the company. It is claimed that the company, by its representatives, elected to take possession of the spreaders and divest the appellant of his right to sell the same under the contract. The contract provides:

"In case the first party shall repossess any goods under this contract, or authorize the return of any goods, the second party agrees to pay freight or other charges and any depreciation in the value of the goods on account of exposure, handling, or from

any other cause whatsoever, the amount of such depreciation to be determined by the first party.''

This, however, did not obligate appellant to return the property, but only to pay the freight and damages in the event of a return.

If the contract was in force in its entirety after May 6, 1922, then appellant had the right thereunder to sell the spreaders. If it was not in force after that date, then appellant was not the agent of the manufacturing company thereunder. If he was not the agent of the manufacturing company after May 6, 1922, then he could not be liable for the crime charged in this indictment. Whether or not he might be guilty of some other offense, or in some other relationship, is a matter with which we are not concerned here. He is charged solely as the agent of the Litchfield Company.

Appellant insists that the contract was in full force and effect after May 6, 1922, and that it could not be modified by any settlement or agreement with any representative of the manufacturing company until this was submitted to and approved by the company. The contract provides:

''No settlement, adjustment or agreement of any kind, made by any agent or person, claiming to represent the first party, shall be valid until submitted to and approved by said first party at its office in Waterloo, Iowa.''

The settlement claimed to have been made on May 6, 1922, was not shown to have ever been approved by the manufacturing company. In fact, it appears affirmatively and without dispute that, after the alleged settlement of May 6th, the company knew of the sale of the two spreaders by appellant, and ratified the same by issuing guaranty bonds to the purchasers. There was also no claim that the manufacturing company gave appellant any credit on his note for the value of all of the spreaders.

One of two things must be certain. The contract was either terminated, or it was not. By its own terms, it could not be modified except by approval of the company, and this was not had. In fact, the authority of the representative of the company to make such a settlement is not shown. If it was terminated, then appellant was no longer an agent of the company, and

could not be liable for embezzlement as such agent. If it was not terminated, then it was in full force and effect.

The parties argue the case as though the contract was not terminated or modified on May 6th. Appellant so contends. The State says:

"The only question at issue is whether or not the defendant was in the possession of these spreaders and the proceeds from the sale thereof as an agent of the Litchfield Company, and therefore responsible to the company for both the property and the proceeds, or whether the relationship existing between them was that of creditor and debtor. The prosecution proceeded on the theory that the defendant was the agent of the Litchfield Company; and we believe that, after a consideration of all of the evidence and a careful reading of the contract entered into, that such was the case."

If the contract was not terminated, the question arises. as to whether or not appellant was an agent of the Litchfield Company under his contract, and could be held for embezzlement by reason of having sold the spreaders as such agent.

If the contract is to be construed to be a contract of agency, as contended by the State, then it not only contemplated that the agent should sell the property, but vested him with express authority so to do. It can scarcely be seriously contended that appellant could be guilty of embezzlement in selling the property when the contract expressly provided that that was the very thing he was to do. Whether or not he might be guilty of embezzlement of the proceeds of the sale of the property coming into his hands is not before us, because the indictment charges him with embezzlement of the spreaders, and not with embezzlement of the proceeds of the sale of the spreaders. An embezzlement of the spreaders would be one thing, and an embezzlement of the proceeds received from a sale of the spreaders would be another thing. In fact, they are two separate and distinct offenses.

In *State v. Crosswhite,* 130 Mo. 358 (32 S. W. 991), it is said:

"The embezzlement of the potatoes and the proceeds arising from them were two separate and distinct offenses, and evidence

in proof of one was not permissible for the purpose of proving the other.''

Also in point is *Sansberry v. State,* 5 Ala. App. 117 (59 So. 340), wherein a chemical company shipped certain fertilizers to an agent. As in the case at bar, the title to the fertilizers remained in the chemical company, under the contract. The agent was empowered, under the contract, to sell the fertilizers and remit therefor to the company. He sometimes sold for cash, and sometimes received cotton in· payment for the fertilizers. The court said:

''The contract under which the Chemical Company shipped the fertilizers to the defendant is illustrative of the principles of law which govern the case. Under that contract, the title to the fertilizers was to remain in the company. The defendant, however, had the power, under that contract, to sell the fertilizers. He was, however, upon a sale for *cash,* to remit the cash to the company. Suppose he had sold $100 worth of the fertilizer for cash, and had fraudulently converted that cash to his own use. Could it be successfully contended that he would have been, under such circumstances, guilty of embezzling the fertilizers so sold? The question, it seems to us, carries with it its own answer. When the act is legal, the law will not inquire into the motive which prompted the act. In the present case, there is not a scintilla of doubt about the proposition that the defendant possessed the right to sell the cotton. If he was guilty of embezzlement, he was guilty of embezzling the proceeds of the cotton, and not the cotton. *Gray v. State,* 160 Ala. 107 (49 So. 678). Having the authority to sell the cotton, the defendant, even if he sold it with the intent to fraudulently convert the proceeds to his own use, was not guilty of embezzling the cotton.''

See, also, *Henderson v. State,* 55 Tex. Cr. App. 640 (117 S. W. 825).

So we are forced to the conclusion that, if the contract is to be construed to be a contract of agency, as claimed by both parties, by its very terms appellant was authorized to sell the spreaders, and as the indictment charges him only with embezzlement of the spreaders, and not of the proceeds, he could not be liable.

It is not to be understood from the foregoing that we are placing a construction upon the contract in question, and deciding whether the contract in its entirety created the relation of principal and agent, or debtor and creditor. What we do hold is that, for the purposes of this case, even if it be construed to be a contract of agency, still appellant could not be held liable thereunder for embezzlement of the spreaders which he sold under the terms of the contract. If there was no agency, then appellant could not be liable for the offense charged in the indictment.

It follows that the court erred in overruling appellant's motion for a directed verdict.

Other errors assigned will not be discussed, in view of our holding on the foregoing matter.

It follows that the judgment appealed from must be, and it is,—*Reversed.*

ARTHUR, C. J., EVANS and PRESTON, JJ., concur.