[File No. Cr. 149.]

STATE OF NORTH DAKOTA, Respondent, v. H. G. BERTRAND, Appellant.

(278 N. W. 237.)

Opinion filed January 15, 1938.

*Charles G. Bangert,* for appellant.

*P. O. Sathre,* Attorney General, and *A. R. Bergesen,* State's Attorney, for respondent.

Burr, J. The information, after stating the time and place of the commission of the alleged offense, charges:

"That at said time and place the said defendant, H. G. Bertrand, being then and there the agent and servant of the Electrolux, Inc., a corporation, did wilfully, unlawfully, feloniously and fraudulently, appropriate to his own use and secrete with a fraudulent intent to appropriate to his own use certain personal property which had come into his control and care by virtue of his employment as such agent and servant of said Electrolux, Inc., a corporation, to-wit: that certain Electrolux Cleaner and Air Purifier, Model 12, Serial A #807041, then and there the property of the said Electrolux, Inc., a corporation, said personal property being then and there of the value of more than Twenty Dollars ($20.00)."

At the close of the case the defendant moved the court to require the State to elect upon what issue it would present the matter to the jury, and counsel for the State announced:

"The State elects to stand on the proposition of embezzlement of the machine, or the proceeds thereof, not upon the proposition of secreting."

However, the information does not charge the defendant with embezzling the proceeds of the machine. The case was submitted to the jury and a verdict of guilty returned. Motion for a new trial was made and denied, and judgment was entered. From the order denying a new trial and from the judgment defendant appeals.

There are sixty-two specifications of error—six dealing with the instructions of the court with four subdivisions, seven with failure to give requested instructions with numerous subdivisions, forty-five on the reception of evidence with one hundred or more subdivisions, one dealing with the refusal of the court to grant defendant's motion to dismiss, and three dealing with the general proposition that the verdict is contrary to the instructions, the law, and the evidence.

We do not consider it necessary to review all of these specifications of error. We deal solely with what is the crucial point in the case.

The defendant is charged with the embezzlement of the Electrolux

cleaner and air purifier, Model 12, Serial A #807041. The court charged the jury that the defendant was prosecuted under the provisions of § 9931 of the Compiled Laws, which provides:

"If any person, being an officer, director, trustee, clerk, servant or agent of any association, society or corporation, public or private, fraudulently appropriates to any use or purpose not in the due and lawful execution of its trust, any property which he has in his possession or under its control in virtue of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, he is guilty of embezzlement."

There is a mass of testimony. The transcript consists of two volumes of over five hundred pages. It is unnecessary to summarize all of this testimony. For the purpose of this appeal it is sufficient to call attention to the claim of the State as to what the evidence shows without reference to any explanations given by the defendant or any testimony favorable to him.

The Electrolux Company maintained a branch office and depot in Fargo of which the defendant was the manager and also a salesman. Associated with him as one of the employees was A. D. Bland, the cashier, who had charge of the collection department. Bland's duty was to accept and send to the head office at Duluth, Minnesota "any contract and any payments turned in by agents operating out of the Fargo office."

Sales were made upon the installment plan for $77.50 with sales tax of $1.55 at times. If sold for cash a "Special Discount" of $7.75 was allowed. In either event a contract was to be signed by the purchaser and delivered to Bland, whose duty it was to report the sale to the company at Duluth, forwarding all papers and receipts. If a machine were sold on time an initial payment of ten dollars was required, which payment could be retained by the agent and a record thereof made on what is known as Form 26. The agent was permitted to accept as part payment a used vacuum cleaner at a maximum valuation of $5.00, and, as manager of the Fargo office, defendant had the right to "repossess" any machines sold on the installment plan and not paid for.

The machine in question, No. 807041, was the property of the Electrolux Company and in the possession of the defendant, with the

right, privilege, and duty of selling the same and accounting to the company for the proceeds.

"On January 3, 1936 the defendant Bertrand took out machine #807041. On January 17, exactly fourteen days later he turned in a purported contract under the name of L. W. Reed (Plaintiff's Exhibit A), which contract recited a sale of the machine on an installment basis with a down payment of $10.00 and a second-hand cleaner turned in. This purported sale was reported to the company by Mr. Bland under date of January 18, 1936 (Plaintiff's Exhibit P) which indicates that the $10.00 claimed to have been paid to the agent was retained by the agent and form 26 turned in. F 26 is a form used by the company where the agent retains the $10.00 down payment and instructs the company to deduct that amount from his pay roll."

This quotation is from the statement set forth by the State in its brief and shows its version of the facts dealing with the purported sale of this machine. The defendant claims he refunded the "$10.00 down payment" to Reed when he repossessed the machine and thus had $10.00 of his own money in it.

It is the claim of the State that Reed was a fictitious character. However this may be, the defendant on January 31, 1936 (the contract inadvertently says 1935) sold this machine to one Mrs. L. H. Rutledge for $69.75, taking in a secondhand cleaner at $5.00 and her check for $64.75, and thus, with the permissible discount, she paid him in full for this machine without reference to the $10.00 deducted from defendant's "pay roll."

The State shows that at the time of this sale the defendant "filled out a contract which was signed by Mrs. L. H. Rutledge." Bertrand receipted it as paid in full and immediately delivered this check to Bland the cashier, as he was required to do by his instructions, but not the contract. Defendant claims he told Bland to credit the Rutledge check on the Reed contract already reported. The Rutledge sale was not reported by Bland to the company, but the check was remitted to the company and the proceeds received in the due course of business. Bland testified that if the Rutledge check was taken in liquidation of the Reed contract, there was no occasion for turning in the Rutledge contract; but the State further shows that after the receipt of the Rutledge check the defendant delivered several install-

ment payments on the machine in question, ostensibly in the name of Reed and under the Reed contract. It is clear, therefore, that so far as this particular machine is concerned the company received more than the full price therefor—$10.00 deducted from the pay roll of the defendant, if so deducted, $64.75 in cash from Mrs. Rutledge, and a secondhand cleaner taken as part payment at an allowance of $5.00, and the "Reed" installment payments—and the defendant accounted to the company in full for it so far as the money received was concerned. Of course, it is the claim of the defendant that the sale to Reed was a bona fide sale, that the machine was repossessed and then sold to Mrs. Rutledge.

The State shows that on January 27, 1936 one Rosholt, an accredited salesman, sold an Electrolux machine, No. 807185, to Miss Strutz for $77.50. She made an initial payment of $10.00, delivered a secondhand machine for $5.00, and signed an installment contract for $62.50, which contract does not appear in any of the reports sent in by Bland. There is no question raised as to the regularity of this deal. On February 1 Miss Strutz decided to pay in full and take advantage of the discount of $7.75 allowed therefor, which, with the second machine turned in, made the price to her $64.75. Consequently, she sent to the Fargo office the necessary amount due and this was received by Bland as collector and cashier. Immediately thereafter Bland remitted to the headquarters of the company at Duluth a purported receipted contract alleged to have been signed by the salesman, Rosholt, and Miss Strutz, showing sale to her for cash and the secondhand machine, with discount. With this he sent his report of the sale to Miss Strutz and the check given by Mrs. Rutledge for $64.75, which corresponded in amount with the amount Miss Strutz had paid, and Bland says, "it would no doubt cover that item."

According to the record this was the only contract in that amount submitted to the company for the months of January and February. The sale to Mrs. Rutledge was never reported to the company nor was the actual installment contract with Miss Strutz which Rosholt secured. The company, therefore, had no report of any sale to Mrs. Rutledge, nor did the company receive any report as to the $64.75 paid by Miss Strutz unless the Rutledge check was mailed on the theory it would be accepted as payment on the Strutz sale. The State

says, therefore, that the company "was out" the proceeds of one or the other of these two machines and charged the defendant with the embezzlement of this machine which he reported to have sold to Reed and which he actually did sell to Mrs. Rutledge.

For the purpose of this appeal we take the view of the State, that the Reed contract was a subterfuge and showed reprehensible conduct on the part of the defendant, but we must ever keep in view that the defendant is charged with embezzling this special machine, not the proceeds, and not with secreting it "with a fraudulent intent to appropriate to his own use." This charge was abandoned specifically.

The State in its argument says: "If a machine is sold for cash and is reported by the agent to his employer as having been sold on a time basis, and the money resulting from such sale is withheld from the employer, then certainly the employer is damaged. . . . Now, if the agent takes the check which he received as full payment of such machine and turns it in in payment of another machine sold for cash, the company is still out the price of one machine."

This statement is correct but still leaves the issue unsolved. Under the evidence as produced by the State it was the duty of Bertrand to deliver the Rutledge contract and check to Bland. His duty was discharged when he turned these in to the cashier at Fargo. There is no claim by the State of any evidence to show that there was a conspiracy, or agreement, or understanding between Bertrand and Bland that the Rutledge check should be reported to the company as payment on the Strutz deal, except that one may infer there must have been such an understanding.

It must be clear first that the defendant did not take this machine No. 807041 for himself. He sold it for all that the company required and turned in to the company the actual proceeds received for that specific machine. His conduct was peculiar if we accept the view of the State, and in connection with a large number of other cases of alleged fictitious deals might give foundation to the claim of the State that the defendant, either by himself or in conjunction with others, had embezzled considerable money belonging to the company. But he is not charged with this.

Where an agent, authorized to sell the property of his principal, sells the property as the property of the principal and for the prin-

cipal, and at the price and on the terms fixed by the principal, he is selling according to the authority vested in him; and, as stated in State v. Fox, 197 Iowa, 1259, 198 N. W. 777, 779: "It can scarcely be seriously contended that appellant could be guilty of embezzlement in selling the property when the contract expressly provided that that was the very thing he was to do. Whether or not he might be guilty of embezzlement of the proceeds of the sale of the property coming into his hands is not before us, because the indictment charges him with embezzlement of the spreaders, and not with embezzlement of the proceeds of the sale of the spreaders. An embezzlement of the spreaders would be one thing and an embezzlement of the proceeds received from a sale of the spreaders would be another thing. In fact, they are two separate and distinct offenses."

This case was followed in State v. Reynolds, 209 Iowa, 547, 228 N. W. 285, 286, wherein it is shown that "if the indictment had charged the defendant with the embezzlement of money," it would have been a different matter.

The same principle is upheld in Munoz v. State, 87 Fla. 220, 99 So. 555, 556, where the court says: "Where a person intrusted with property to sell for another sells it and keeps the proceeds, he cannot be convicted of embezzling the property, although under certain circumstances he may be convicted of embezzling the money derived from the sale."

In Brown v. State, 162 Tenn. 639, 39 S. W. (2d) 746, 747, the court says: "Plaintiff in error, having been clothed with authority to sell the cars put in his possession, was not guilty of a fraudulent appropriation of this property by a sale thereof. If there was a fraudulent appropriation, it was of the proceeds of the sale."

Here the defendant was charged in one count of the indictment with the embezzlement of two Essex automobiles.

In McCrary v. State, 51 Tex. Crim. Rep. 502, 103 S. W. 924, 123 Am. St. Rep. 905, 14 Ann. Cas. 722, the same doctrine is enunciated. An organ had been sold by an agent as the property of his principal Maxfield, and the court says: "The sale having been made under authority as Maxfield's property, there was no conversion. . . . If the sale had been made of the organ as the property of Maxfield and under authority from Maxfield, and there was a subsequent conversion of

the proceeds, appellant might have been convicted of embezzling the proceeds of such sale as the property of his principal." See also Dotson v. State, 51 Ark. 119, 10 S. W. 18, 20.

That there is a distinction between the embezzlement of the property and the embezzlement of the proceeds of the sale of the property is noted in Baker v. State, 6 Tex. App. 344.

In State v. Crosswhite, 130 Mo. 359, 32 S. W. 991, 993, 51 Am. St. Rep. 571, it is shown that a charge of embezzlement for selling potatoes with intent to convert them to his own use is a separate and distinct offense from a charge of embezzlement of the proceeds arising from the sale.

In McCrary v. State, supra, the question was raised "that appellant at the time he made sale of the organ intended to appropriate the proceeds thereof, and under such circumstances would be guilty of embezzlement. . . ." The court did not pass upon that point, nor need we in this case for two very good and sufficient reasons. The proceeds from the sale were in fact turned over to the principal, and the information does not charge the defendant with embezzlement in that manner.

It would have been a different proposition entirely if the defendant had been charged with embezzlement of an aggregate sum of money consisting of various peculations as in State v. Bickford, 28 N. D. 36, 147 N. W. 407.

It is conceivable that an agent may be guilty of embezzlement of the money belonging to his principal, which comes rightfully into his hands, even though he remits the actual cash to the principal, if he so pays it for the purpose of covering and hiding some other embezzlement; but that is not the issue in this case. In State v. Laechelt, 18 N. D. 88, 118 N. W. 240, we show "that, under an information charging embezzlement of a check, the state will not be permitted to show other embezzlements by the accused, and that he used the same to cover up prior embezzlements. Where proof of this character is relied upon for conviction, the defendant should be apprised thereof by the information."

The information does not charge that the proceeds of this machine

were used to cover up the embezzlement of some other machine, such as the machine sold to Miss Strutz, or the proceeds thereof.

The information charging the defendant with the embezzlement of a specifically described machine, entrusted to his care as agent, and the proof showing that he sold such property as such agent as and for the property of his principal and for the price fixed by his principal, and turned in to the company the full price received, the defendant, under this information, cannot be held for the embezzlement of that machine.

Accordingly, the motion for new trial should have been granted, and the judgment therefore is reversed.

CHRISTIANSON, Ch. J., NUESSLE and MORRIS, JJ., and JANSONIUS, Dist. J., concur.

Mr. Justice SATHRE, being disqualified, did not participate, Hon. FRED JANSONIUS, Judge of Fourth Judicial District, sitting in his stead.