### LEWIS v. SHAW.

(Supreme Court, Appellate Division, Fourth Department. November 13, 1907.)

1. BANKRUPTCY—DISCHARGE—BARRED DEBTS—CONVERSION.

Under Bankr. Act July 1, 1898, c. 541, § 17, subd. 2, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428], providing that debts not affected by discharge in bankruptcy are, among others, judgments in actions for frauds, etc., a simple claim for conversion of money deposited with defendant is barred by defendant's discharge in bankruptcy.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 792, 818.]

2. SAME—"FIDUCIARY CAPACITY."

Bankr. Act July 1, 1898, c. 541, § 17, subd. 4, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428], provides that debts created by the bankrupt's fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity shall not be discharged. Held, that the words "fiduciary capacity" were limited to cases of technical trusts expressly created, and did not include commercial transactions in which some trust was impliedly imposed in the bankrupt.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 794.]

3. SAME—CONVERSION—EMBEZZLEMENT.

Plaintiff deposited money with defendant, he to safely keep the same and return it on demand. Defendant converted the money and became a bankrupt. Held, that he did not receive the same in a "fiduciary capacity" within Bankr. Act July 1, 1898, c. 541, § 17, subd. 4, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428], so that defendant's discharge barred plaintiff's right to recover the money, though defendant's act constituted embezzlement.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 794, 797.]

McLennan, P. J., dissenting.

Appeal from Trial Term, Lewis County.

Action by Joseph Lewis against Watson M. Shaw. From a judgment on a decision of the court granting a nonsuit and from an order denying a motion for a new trial on the minutes, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Wormuth & Wormuth, for appellant.
C. S. Mereness, for respondent.

WILLIAMS, J. The judgment and order should be affirmed, with costs.

The action was brought for the conversion of $150 in money. The complaint alleged a delivery of the money by plaintiff to defendant for safe-keeping, with an agreement to keep safely and return on request, a request and demand and refusal, and therefore a wrongful and unlawful conversion. The answer denied the allegations of the complaint, and set up a discharge of defendant in bankruptcy. The reply alleged that the money was held by defendant in a fiduciary capacity when it was converted, and therefore the discharge in bankruptcy did not release him from paying the claim. Upon the trial it appeared, without contradiction, that the $150 was delivered to defendant for safe-keeping, to be returned to plaintiff when requested; that return was requested and refused, the defendant having used the same. The defendant testified that he used the money with plaintiff's consent. Plaintiff denied he gave any such consent. The bankrupt proceedings and discharge were also proven. The court submitted to the jury the question whether consent was given by plaintiff to defendant's using the money, and the jury found there was no consent. The question of nonsuit having been reserved until after the verdict was rendered, the court, after hearing counsel, granted the motion.

The question involved upon this appeal is whether by the defendant's discharge in bankruptcy he was released from the claim here being prosecuted. Formerly it was held that a simple claim for conversion was not barred by a discharge in bankruptcy. Watertown Carriage Co. v. Hall, 75 App. Div. 201, 78 N. Y. Supp. 1028, affirmed 176 N. Y. 313, 68 N. E. 629; Frey v. Torrey, 175 N. Y. 501, 67 N. E. 1082; but such is not now the law of this state. Tindle v. Birkett, 183 N. Y. 267, 76 N. E. 25, following Crawford v. Burke, 195 U. S. 176, 25 Sup. Ct. 9, 49 L. Ed. 147. Now a claim for conversion will be barred by the discharge, unless it has been put in judgment. Section 17, subd. 2, Bankr. Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428]. It is claimed, however, that the conversion in this case constituted embezzlement and misappropriation, and was therefore excepted from the discharge under subdivision 4 of section 17 of the bankruptcy act; but, in order to be so excepted, such a claim must be against a person acting in a "fiduciary capacity."

This brings us to the consideration of the only real question involved in this appeal, whether at the time of the conversion and misappropriation of the money in this case the defendant held it in a "fiduciary capacity." This term has been used in the various bankrupt acts of August 19, 1841 (5 Stat. 440, c. 9, § 1); March 2, 1867 (chapter 176, 14 Stat. 517), and July 1, 1898, and its meaning manifestly has been the same under all of them. The United States Supreme Court in 1844 laid down the rule as to the scope and meaning of this term, which has been approved of and followed ever since by that court and by the courts of this state. In Chapman v. Forsyth, 2 How. (U. S.) 202, 11 L. Ed. 236, the question submitted in that case was:

"Is a commission merchant or factor (who sells for others) indebted in a fiduciary capacity within the act (1841) provided he holds the money received for property sold by him, and which property was sold on account of the owner and the money received on the owner's account?"

The court answered this question in the negative, saying, among other things:

"If the act embrace such a debt, it will be difficult to limit its application. It must include all debts arising from agencies, and, indeed, all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is in a commercial sense a disregard of a trust. But this is not the relation spoken of in the first section of the act. The cases enumerated, 'the defalcation of a public officer, executor, administrator, guardian or trustee,' are not cases of implied but special trusts, and the 'other fiduciary capacity' mentioned must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract. A factor is not therefore within the act."

The Supreme Court of the United States in 1877, in a case arising under the bankrupt act of 1867, in Neal v. Clark, 95 U. S. 704, 24 L. Ed. 586, quoted the language used in the Chapman Case above with approval, and said that a like process of reasoning led to the conclusion that the fraud referred to in the second section of the act under consideration meant positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement; and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality. This case did not involve the meaning of the term "fiduciary capacity," but quoted and approved of the language used in the Chapman Case. The Court of Appeals in 1879, in a case arising under the bankruptcy act of 1867, involving both the questions of "fiduciary capacity" and "fraud," in Hennequin v. Clews, 77 N. Y. 427, 33 Am. Rep. 641, approved of and followed both of the United States Supreme Court cases above. The debtor was a pledgee of stock, and he sold the same contrary to the terms of the pledge, and was thus guilty of a conversion. As to the term "fiduciary capacity," the court quoted the language from the Chapman Case, and among other things said:

"It is claimed that the bankruptcy act of 1867, by omitting the particular trusts specified in the act of 1841 and inserting only the general words 'any fiduciary capacity,' is more comprehensive than the act of 1841. But I think a more reasonable inference is that, the Supreme Court of the United States having determined that these general words meant only trusts of the character specified in the act of 1841, Congress deemed it unnecessary to insert them. * * * Here the relation rested entirely in contract. * * * If he violated that obligation, he is liable for conversion of the property, and in a general sense he violated a trust, but not in that particular and technical sense which the bankrupt act contemplates. Trust and confidence are reposed in nearly all commercial transactions, and the precepts of strict business integrity regard every creditor as a quasi trustee for his creditors, but the bankruptcy act would have a very limited operation if the language of this section embraced cases of such general fiduciary incidents."

And, again, in 1882, the Court of Appeals, in a case arising under the bankruptcy act of 1867, involving both the questions of "fiduciary capacity" and fraud, in Palmer v. Hussey, 87 N. Y. 303, followed the

Chapman and Neal cases in the United States Supreme Court and the Hennequin Case in the Court of Appeals. The action was for the conversion of bonds and moneys collected upon coupons, which were transferred to defendant, the agent and broker of plaintiff, under an agreement that they should be held subject to the order of the plaintiff, the coupons to be collected by defendant for the account of plaintiff. It was claimed that the defendant held the bonds and proceeds of the coupons in a "fiduciary capacity" under the bankruptcy act, and fraudulently transferred them, and the debt was not therefore barred by his discharge in bankruptcy. The court held to the contrary, however, saying:

"The complaint alleges that he received the bonds 'as agent and broker and in a fiduciary capacity,' and upon an express written agreement to return them on 10 days' notice. The referee finds that they were received in a fiduciary capacity upon the terms of the agreement. The affidavits' and the evidence show no other or different trust or fiduciary relation than such as may be said always to exist in cases of agency. In every such case there is an element of trust and confidence so that a breach of duty may be said to be a breach of trust, but the agent is nevertheless not a fiduciary within the meaning of the bankruptcy act."

Then followed a discussion of the question of fraud. And, again, in 1891, the Court of Appeals, in a case arising under the bankruptcy act of 1867, involving the question of "fiduciary capacity," in Mulock v. Byrnes, 129 N. Y. 23, 29 N. E. 244, followed the former decisions referred to above, and held that this term did not apply to cases of implied trusts, but only to those technical trusts which were expressly constituted by the parties. The cause of action was for the failure of an agent to pay over to his principal rents collected by him. The court considered and quoted from the cases so followed in both the United States Supreme Court and the Court of Appeals. The language of the present bankruptcy act of 1898 as to "fiduciary capacity" is not materially different from that of the act of 1867, and the same rule of construction should be applied.

In this case the defendant was a naked bailee of the moneys, under an express agreement to keep safely and pay over on request. He was not acting in a "fiduciary capacity" under the bankruptcy act, and his discharge therefore released him from this debt or claim, and the plaintiff was not entitled to recover. The nonsuit was properly granted. All concur, except McLENNAN, P. J., who dissents.

McLENNAN, P. J. (dissenting). Upon the facts which are recited in the prevailing opinion, and which, we will assume, were properly established upon the trial of this case, the defendant was guilty of the crime of larceny in having appropriated, under the circumstances, plaintiff's money to his own use. Section 528 of the Penal Code provides:

"A person * * * Subdiv. 2. Having in his possession, custody or control as bailee * * * any money * * * appropriates the same to his own use * * * steals such property and is guilty of larceny."

Clearly upon the facts recited in the prevailing opinion the defendant was guilty of having stolen plaintiff's money. We think no well-considered authority can be found which sustains the proposition that

under such circumstances such guilty party may avoid liability to the person whom he has thus wronged by filing a voluntary petition in bankruptcy and obtaining a discharge. The provisions of the bankruptcy law were not in my opinion intended to permit such a palpable wrong to be successfully consummated. If the defendant in this case had taken from plaintiff's till $150 without the knowledge or consent of the plaintiff, he would only have been guilty of larceny, and yet it would hardly be contended that his liability to the plaintiff for such act might be discharged by filing a petition in bankruptcy and obtaining his discharge thereon. And yet he was only guilty of the crime of larceny. Under the facts assumed to have been proven in the case at bar, the defendant was equally guilty of such crime. It seems to me absurd to say that he may avoid liability to the person whom he has wronged by any provision of the bankruptcy act.

If the views expressed in the prevailing opinion are correct, then it follows that one person may obtain the money of another by stealing the same, and then be relieved from liability for such theft by a discharge in bankruptcy. However fine spun may be the argument of some of the cases to which attention has been called, as to what is included or meant by "fiduciary capacity," we think no case can be found where it has been held that, where a person obtains the property or money of another under such circumstances as to constitute grand larceny, the obligation to restore such property or repay such money has been abrogated by discharge in bankruptcy.

I think the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event.