20166.   HUBBARD *v.* BIBB BROKERAGE COMPANY.

Decided May 15, 1931. Rehearing denied October 1, 1931.

6

*R. L. Smith, E. F. Goodrum, J. L. R. Boyd,* for plaintiff in error.
*Nottingham & Nottingham,* contra.

STEPHENS, J. (After stating the foregoing facts.)

The suit not being one to recover upon the contract represented by the assignment, the contents of which were alleged in the petition and a copy of which appeared as an exhibit, but being a suit by the assignee against the assignor, based upon the assignor's alleged act in collecting from his debtor and converting to his own use a fund which he had assigned to the assignee, the

amendment striking the allegations in the petition and in the copy of the assignment attached as an exhibit, to the effect that the fund assigned was earned by the defendant while in the employ of Southern Railway Company, and substituting in lieu thereof allegations that the fund was earned by the defendant while in the employ of Georgia Southern & Florida Railway Company, did not add a new and distinct cause of action. The cause of action remained the same, but the amendment merely perfected the allegations in the petition by correcting a misdescription, without in any wise changing the cause of action. The decision in the case of *Venable* v. *Burton,* 118 *Ga.* 156 (45 S. E. 29), which held that an amendment changing the description of land as contained in a petition in an action for the recovery of the land set out a new cause of action, is clearly distinguishable. In that case the land was the subject-matter of the suit, while here the suit is not based on the assignment, but on the act of the defendant in converting money of another which he had collected. The assignment is evidentiary. Besides, that decision was by a divided court, and has since been restricted. *Hunnicutt* v. *Cason,* 151 *Ga.* 545 (107 S. E. 521). It was not error, therefore, to allow the amendment.

█ The defendant in his plea having admitted an indebtedness to the plaintiff in an amount equal to the sum which he had assigned to the plaintiff, but alleging that the indebtedness was dischargeable in bankruptcy, and it appearing that the defendant had, by a written assignment, assigned a portion of his wages or salary already earned during a designated period while working "in the capacity of fireman" and due him by the G. S. & F. Ry. Co., and it appearing that the defendant, during this period, worked for the G. S. & F. Ry. Co. only in the capacity of a brakeman and earned wages or salary while working in this capacity only, it is inferable that it was intended by the assignment to assign the wages or salary earned by the defendant while in the employ of the G. S. & F. Ry. Co. during that period, whatever the capacity in which the defendant worked, whether as a brakeman or as a fireman.

█ While the testimony of the defendant as a witness in his own behalf is perhaps, under the ruling in *Jackson* v. *Bloodworth,* 41 *Ga. App.* 216 (152 S. E. 289), sufficient to authorize the inference that the transaction between him and the plaintiff was an

usurious loan, made under the guise of successive salary assignments, which had been repaid at lawful interest, the testimony of the only witness for the plaintiff, as certified by the judge of the municipal court in answer to the defendant's petition for certiorari, while to the effect that the defendant had been doing business with the plaintiff "off and on" for about three years, and that the witness did not consider that the defendant had an "open account" with the plaintiff, is unequivocal, to the effect that the plaintiff, on the date named in the assignment as described in the petition, "bought" $47 of the defendant's wages for $40.50, that on that date the defendant signed the "bill of sale" or the salary assignment, described in the petition, and that "at the time of this transaction" the defendant "did not owe us [the plaintiff] anything." While the witness did not deny that the dealings between the plaintiff and the defendant had their inception in what the defendant described as a loan, made about three years prior to the date of the execution of the bill of sale or salary assignment which is the subject-matter of the present litigation, and while the witness did not deny that prior to this latter date there had been a series of assignments by the defendant to the plaintiff which might, under the rulings in *Jackson* v. *Bloodworth,* supra, constitute a loan of money from the plaintiff to the defendant and not a bona fide purchase of the defendant's salary or wages, he does testify that when the bill of sale or assignment of the defendant's wages which is the subject-matter of the present litigation was made by the plaintiff the defendant owed the plaintiff nothing. It is therefore inferable that any indebtedness from the defendant to the plaintiff which may have arisen out of these previous transactions had been discharged and settled in full, and that the bill of sale or assignment which is the subject-matter of the present litigation was a new and original transaction, and that its character, whether as constituting a loan of money or a purchase of salary or wages, was unaffected by any previous course of conduct between the plaintiff and the defendant. And while this witness for the plaintiff did not expressly testify that when the last bill of sale or assignment of the defendant's salary or wages was made by the defendant to the plaintiff a sum of money was paid to the defendant in consideration of this assignment, the witness did testify that at this time, when the defendant owed the plaintiff nothing, the plain-

tiff "bought" $47 of the defendant's wages "for the sum of $40.50." The inference, therefore, was authorized that, in *buying* a portion of the defendant's wages for .$40.50, this amount of money was paid to the defendant. The judge of the municipal court of Macon, who tried this case without the intervention of a jury, was, under the evidence, authorized to infer and to find as a fact that the bill of sale or assignment which is the subject-matter of the present litigation was a bona fide sale or assignment by the defendant to the plaintiff of $47 of the defendant's salary which the defendant had already earned for the period stipulated in the assignment, made in consideration of $40.50 paid to the defendant by the plaintiff, and that this bill of sale or assignment was neither by itself nor in connection with any other transaction a scheme or device, or any part of a scheme or device, to evade the laws against usury. *Tollison* v. *George,* 153 *Ga.* 612 (112 S. E. 896); *Central of Ga. Ry. Co.* v. *King,* 137 *Ga.* 369 (73 S. E. 632); *King* v. *State,* 136 *Ga.* 709 (71 S. E. 1093); *Atlanta Joint Terminals* v. *Walton Discount Co.,* 29 *Ga. App.* 225 (114 S. E. 908); *Ison Co.* v. *Atlantic Coast Line R. Co.,* 17 *Ga. App.* 459 (87 S. E. 754); *Jackson* v. *State,* 5 *Ga. App.* 177 (62 S. E. 726). The general rule laid down in these decisions is not affected by anything contained in sections 3453, 3458 and 3459 of the Civil Code of 1910.

■ A bona fide bill of sale or assignment of past-earned wages or salary, whether of an entire fund or of only an interest therein, confers upon the assignee a right, whether legal or equitable, to enforce, in a proper proceeding, the collection of the sum assigned.

While an assignment of "an undivided interest in my account for wages or salary, . . said interest amounting to" so many dollars, would perhaps be an assignment of an entire debt, where the evidence shows that the entire debt was equal in amount to the amount of the interest assigned, yet where, as here, the evidence is silent as to the amount of the entire debt, an assignment of "an undivided interest," etc., it seems would be prima facie evidence of an assignment of but a part of the debt. This is not in conflict with the ruling in *Etheredge* v. *Wilson,* 41 *Ga. App.* 432 (153 S. E. 230), to the effect that, as against demurrer, an assignment of this description contained in the petition in that case did not appear to be a partial assignment. Whether the assignment was of an entire debt, or of a part thereof only, it is unnecessary

to decide. If it were of the entire debt the legal title unquestionably was in the assignee, and he could recover thereon. *Milltown Lumber Co.* v. *Carter*, 5 *Ga. App.* 344 (63 S. E. 270) ; *Atlanta Finance Co.* v. *Lunsford*, 32 *Ga. App.* 787 (124 S. E. 814) ; *Spurlock* v. *Garner*, 38 *Ga. App.* 614 (144 S. E. 819). If the assignment were of a part of the debt, there is then presented for determination the question whether the assignee could, nevertheless, maintain a suit at law against the assignor.

If the assignment in the case under consideration, which was only of an "undivided interest" in the defendant's "account for wages or salary already . . earned" by him from the first day of June, 1928, to the third day of July, 1928, in the capacity of a fireman for Georgia Southern & Florida Railway Company, did not constitute an assignment of the entire debt passing the title to the assignee, it constituted a partial assignment only, which conveyed to the assignee, Bibb Brokerage Corporation, only an equitable interest in a portion of the wages or salary thus assigned. *Rivers* v. *Wright*, 117 *Ga.* 81 (43 S. E. 499) ; *Western & Atlantic R. Co.* v. *Union Investment Co.*, 128 *Ga.* 74 (57 S. E. 100). It is therefore assumed that the assignment was of the latter description.

Upon this assumption the legal title to the entire salary or wages earned by the defendant during the period covered by the bill of sale or assignment, including the assigned portion of the fund, remained in the defendant; and the plaintiff as assignee, having only an equitable interest therein, had no right, in the absence of an acceptance of the assignment by the debtor, to enforce collection from the debtor. The defendant, the assignor, however, had the legal right, as the holder of the legal title, to collect from the debtor the railway company the entire fund, including the portion thereof which had been assigned. Upon collecting the money a duty rested upon the assignor to immediately pay over to the assignee, out of the fund collected, a sum equivalent to the amount which had been assigned. The assignor, having possession and holding the legal title to the fund collected, the equitable title to a portion of which was in the assignee to whom the assignor was under a duty to pay over the money immediately, stood, as respects this portion of the fund, in the relationship of a trustee therefor for the benefit of the assignee. It is immaterial that the assignee's interest did not

go to the entire fund which the assignor had collected. The assignee certainly had at least an equitable interest, to the amount of his own claim, in the fund in the assignor's hands. The fund being money and therefore severable, the assignee's equitable right, to the extent of his claim, in the entire fund could, in the absence of any prior equities, be asserted against a portion of the fund equal to the amount of his claim. This is upon the principle, as expressed in Perry on Trusts (5th ed.), §§ 837, 838, and supported by authorities there cited, that "although every identical piece of coin can not be ascertained in a given mass, yet there being so much trust money in the parcel, the cestui que trust is entitled to so much of it, [and] if a trustee deposits trust monies in a bank to his own credit, mixed with other deposits with his own money, the court will disentangle the accounts and give the cestui que trust what belongs to him." See Gunter v. Janes, 9 Cal. 643.

In 5 C. J. 967, it is stated, citing authority, that if "the assignor does collect the chose, the monies in his hands arising therefrom will be held as trust funds belonging to the assignee; and so a judgment thereafter recovered by the assignor against the debtor will be for the use of the assignee."

In 2 R. C. L. 620, it is stated, referring to an assignment of a part of a debt, that "the interest of the assignee is sometimes designated as being that of a cestui que trust or that of one holding an equitable lien on the fund in question, but it is more accurate to state that the assignee of a part of a debt acquires not only a lien on the fund, but an equitable interest in the fund itself." In Warren v. First National Bank, 149 Ill. 9 (38 N. E. 122, 25 L. R. A. 746), it is said, "while a part of a debt or chose in action is not assignable at law, it may be assigned in equity, and in such case a trust will be created in favor of the equitable assignee of the fund, and will constitute an equitable lien upon it." In Phillips v. Edsall, 127 Ill. 535 (20 N. E. 804), it was held that "A part of a debt or chose in action is not assignable at law, but can be enforced in equity; and in such case, a trust will be created in favor of the equitable assignee in the fund, and will constitute an equitable lien upon it." In 3 Pomeroy's Equity Jurisprudence (4th ed.), § 1280, it is stated: "If B is indebted to A, or has in his hands a fund belonging to A, and A assigns such debt or fund to

C, or gives him an order for it upon B, C can maintain no action at law against B to recover the amount, unless B has assented to the appropriation and promised to pay the money; and the action in such case will not be based upon any property or interest in the fund acquired by C through the assignment or order, but. upon B's express or implied promise. The doctrine of equity is very different. Equity recognizes an interest in the fund, in the nature of an equitable property, obtained through the assignment, or the order which operates as an assignment, and permits such interest to be enforced by an action, even though the debtor or depositary has not assented to the transfer. It is an established doctrine that an equitable assignment of a specific fund in the hands of a third person creates an equitable property in such fund. . . The agreement, direction, or order being treated in equity as an assignment, it is not necessary that the entire fund or debt should be assigned; the same doctrine applies to an equitable assignment of any definite part of a particular fund. The doctrine that the equitable assignee obtains, not simply a right of action against the depositary, mandatary or debtor, but an equitable property in the fund itself, is carried out into all of its legitimate consequences. Thus the assignee may not only recover the money from the original depositary, the drawee, but may pursue it or its proceeds under any change of form, as long as it can be certainly identified, into the hands of the third persons who have acquired possession of it from the depositary as volunteers, or with notice of the assignee's prior right. The fund in this respect resembles a fund impressed with a trust."

Where an assignor receives the money from the debtor, after the assignment, he holds the money as trustee for the assignee. Perry on Trusts (5th ed.), § 438, citing Fortescue v. Barnett, 3 Mylne & Keen, 36; Ellis v. Amason, 2 Dev. Eq. (17 N. C.) 273. See Harris v. Campbell, 68 Tex. 22 (3 S. W. 243, 2 Am. St. R. 467), where it was held that the assignee of part of a debt "acquires a right of action in equity against the debtor and not only a lien upon the fund, but a property in the fund itself." See elaborate note in 2 Am. St. R. 472 et seq.

Whether the assignment created a technical or an express trust in the assignor as trustee, or whether it created an implied trust, it is immaterial to a determination of the question as to the as-

signor's right as the beneficiary of the trust to recover in a suit at law against the assignor alone. In 3 Story's Equity Jurisprudence (14th ed.), § 1663, it is stated that "It has been well remarked that the receiving of money which consistently with conscience can not be retained is in equity sufficient to raise a trust in favor of the party for whom or on whose account it was received." The assignor, after having collected from the debtor the fund which he had assigned to the assignee, could not in equity and good conscience convert it to his own use. And whether, before collecting the money, the assignor had stood in the position of a trustee for the assignee, the assignor, after having collected the money from the debtor, certainly held the legal title to the fund, to which the assignee in equity and good conscience was entitled, and which the assignor could not in equity and good conscience withhold from the assignee. The assignor therefore was a trustee for the benefit of the assignee.

Where the trustee, as in the case of the assignor who had collected from the debtor a fund which had been assigned, was under a duty to immediately pay it over to the assignee, and therefore had no duty to perform with respect to the fund which had been collected except to immediately turn it over to the assignee, the trust immediately became executed upon the trustee's receipt of the money, and the legal title to the fund, or so much of the fund, collected which had been assigned, became, by the statute of uses, immediately vested in the assignee who was the beneficiary of the trust. Civil Code (1910), §§ 3736, 3737; *Bowman* v. *Long,* 26 *Ga.* 142; *Walker* v. *Watson,* 32 *Ga.* 264. These code sections apply to personalty as well as to realty. Civil Code (1910), § 3656. See cases collected in 12 Enc. Dig. Ga. R. 340 et seq. The assignee therefore could, on his legal title, recover at law in assumpsit against the assignor upon an implied contract by the assignor to pay over the fund to the assignee (Perry on Trusts (5th ed.), § 843); or the assignee could recover in a tort action against the assignor for a misappropriation by the assignor of the assignee's money by reason of the assignor's having converted it to his own use by his failure to pay it over to the assignee, who holds the legal title thereto, and is entitled to receive it. *Milltown Lumber Co.* v. *Carter,* 5 *Ga. App.* 344 (63 S. E. 270); *Atlanta Finance Co.* v. *Lunsford,* 32 *Ga. App.* 787 (124 S. E. 813); *Spurlock* v. *Garner,*

38 *Ga. App.* 614 (144 S. E. 819). See also, in this connection, *Covington* v. *Rosenbusch,* 148 *Ga.* 459 (97 S. E. 78), and *Information Buying Co.* v. *Morgan,* 39 *Ga. App.* 292 (147 S. E. 128). See also Gunter *v.* Janes, 9 Cal. 643.

This is not a suit by the assignee to impress a trust upon the money in the hands of the assignor, but is a suit to recover of the assignor for a breach of duty with respect to a trust fund. The cestui que trust need not follow the property, but may sue the trustee. *Roberts* v. *Mansfield,* 38 *Ga.* 452. The trustee is under an implied contract to pay. Perry on Trusts (6th ed.) § 843; 3 Story Eq. Jur. (14th ed.) §§ 1697, 1698. The following cases therefore are distinguishable: *Ober* v. *Cochran,* 118 *Ga.* 396 (45 S. E. 382); *Citizens Bank* v. *Haynes,* 144 *Ga.* 490 (87 S. E. 399); *United States Bank* v. *Glanton,* 146 *Ga.* 786 (92 S. E. 625, L. R. A. 1917F, 600).

The suggestion that the assignee's rights can not be adjudicated in a suit, whether in law or in equity, unless both the assignor and the debtor are parties, is untenable. Where the assignor has collected the money from the debtor who had had no notice of the assignment and had not assented thereto, and the debtor has been eliminated from the transaction and the matter has been reduced to a situation involving only the rights of the assignor and the assignee as respects each other, the assignee has no right enforceable against the debtor, either in law or in equity, and it is no answer to a suit by the assignee against the assignor, after the latter has collected the money from the debtor, that the debtor is not a party to the suit. It is a matter solely between the assignor and the assignee, and the assignee's rights in the matter, whether in a suit at law or in equity, can be adjudicated in a suit against the assignor alone. The following decisions, which are relied upon in support of the proposition that the assignee in a partial assignment has no legal title which is enforceable in an action at law against the assignor only, are distinguishable: *Rivers* v. *Wright,* 117 *Ga.* 81 (43 S. E. 499); *Western & Atlantic Railroad Co.* v. *Union Investment Co.,* 128 *Ga.* 74 (57 S. E. 100); *Gleaton* v. *Bank of Arlington,* 40 *Ga. App.* 291 (149 S. E. 438); *Timmons* v. *Citizens Bank,* 11 *Ga. App.* 69 (74 S. E. 798). In none of these cases was the suit brought by the assignee against the assignor alone. In *Rivers* v. *Wright* the suit was by the assignee of a partial assign-

ment against the assignor's debtor. In that case the court held that "a partial assignment of a debt will not vest in the assignee such a title to the portion of the debt assigned as can be enforced in a common-law action, unless the debtor assented to the assignment." In *Western & Atlantic R. Co.* v. *Union Investment Co.* there was a petition for interpleader by the debtor of the assignor. In *Gleaton* v. *Bank of Arlington* there was a suit by the holder of a note against the maker, and what is said in that case, which is obiter, with reference to the right of an assignee of a partial assignment to recover, is not in reference to the assignee's right to recover at law against the assignor alone. It is there stated, on the authority of *Rivers* v. *Wright,* supra, that "a partial assignment of a chose in action may, however, be good in equity without the consent of the debtor, but only one suit thereon may be maintained in such case; and such suit must be in a court of equity, with the assignor, the assignee, and the debtor as parties in the case." In *Timmons* v. *Citizens Bank,* the suit was by the assignee holding the legal title, against the assignor's debtor. What is said there as to the inability of an assignee holding only an equitable title to maintain a suit at law was in reference to a suit by him to recover against the assignor's debtor and not against the assignor. The court said, "The rule is well settled that only a court of equity can enforce a partial assignment of a fund when the debtor has not assented to the assignment. This rule is founded upon the theory that where a debtor has contracted in one obligation to pay a sum of money, the cause of action which may arise against him by reason of his default in failing to make payment according to the terms and tenor of his obligation can not be split up and divided so as to annoy and harass him with more than one suit." In *King* v. *Central of Georgia Railway Co.,* 135 *Ga.* 225 (69 S. E. 113), Ann. Cas. 1912-A, 672, there was an equitable petition by the assignee in a partial assignment, to which the debtor had not assented, against the assignor, the debtor, and a subsequent assignee of the entire fund, brought to establish the priority of the plaintiff's assignment over that of the subsequent assignee, and it was held that, as the plaintiff did not have the legal title but only an equitable right, his assignment could not take priority over that of the subsequent assignee who held the legal title to the entire fund. *Southern Printing Co.* v. *Potter,*

136 *Ga.* 869 (72 S. E. 427), was a suit by the assignee against the assignor's debtor only. In none of these cases was it sought to recover of the assignor for having converted or misappropriated the fund after he himself had collected it from the debtor and had failed to account to the assignee. Nor in any of these cases was it intimated that the assignee of a partial assignment could recover only in equity, and not at law, of the assignor who had collected the money, and had failed to pay over to the assignee his portion thereof.

We are not unmindful of the decision of the other division of this court in *Etheredge* v. *Wilson*, 41 *Ga. App.* 432 (153 S. E. 230). It was there held, Judge Bloodworth dissenting, that, in a suit by an assignee against the assignor alone, the debtor not being a party, to recover a sum of money representing the amount which the assignor had, by a partial assignment of his wages, assigned to the assignee, without the assent of the debtor, and had afterwards collected from the debtor and failed to pay to the assignee, the plaintiff "showed no such title in the money alleged to have been assigned as would support the action for conversion," and that the plaintiff had only an equitable title, and not a legal title, in the fund and could not recover. In that case no specific ruling was made respecting the character of the relationship between the assignor and the assignee, but it was held merely that the assignee of a part of a debt acquires no title enforceable in an action at law. This necessarily held that the assignee had no legal title, but that his title was purely equitable. The ruling in that case is perfectly consistent with the proposition that the nature of the relationship between the parties was that of trustee and cestui que trust; but it is respectfully submitted that the court, in there holding that the assignee had no legal title, or had no title that was enforceable in an action at law, seemingly failed to give effect to the provisions of the statute of uses in force in this State, as codified in sections 3736 and 3737 of the Civil Code of 1910, and recognized in decisions of the Supreme Court of Georgia, among them being *Bowman* v. *Long*, 26 *Ga.* 142, and *Walker* v. *Watson*, 32 *Ga.* 264, where the legal title which is vested in a trustee becomes, upon the execution of the trust, immediately vested in the cestui que trust.

A proposition announced in a single decision, and that by only

a majority of the court, will not necessarily be followed. "The magnitude of the interests involved and the fact that the last decision was by a divided court, are sufficient reasons for a re-examination of the question." 15 C. J. 945. See also Duff *v.* Fisher, 15 Cal. 375. While the writer of this opinion does not subscribe to the proposition that a decision by a majority of the court does not constitute a precedent having the force and effect of authority, attention is nevertheless called to the ruling in *Hill* v. *State,* 112 *Ga.* 400 (37 S. E. 441), to the effect that a former decision of the Supreme Court of Georgia is not binding on that court as authority where it was not rendered by an unanimous bench. As we do not concur in the ruling announced in *Etheridge* v. *Wilson,* we must, with all deference and respect to the opinion of our learned brothers who participated in that decision, decline to follow it.

The assignee could, on his legal title, recover at law against the assignor.

While the petition purports to allege a tortious conversion by the defendant of the plaintiff's property, it nevertheless alleges facts which entitle the plaintiff to recover for a breach by the defendant of an implied contract to pay over the money to the plaintiff. "The nature of an action is not determined by the designation of the pleader. 'It is, in fact, immaterial by what name he calls his suit, or whether he gives it any name at all,' The character and classification of an action depends upon the intrinsic contents of the petition, its recitals of fact, the nature of the wrong sought to be remedied, and the quality of the remedy invoked." *Pennington* v. *Douglas &c. Ry. Co.,* 3 *Ga. App.* 665 (60 S. E. 485) ; see also *Atlanta Finance Co.* v. *Lunsford,* 32 *Ga. App.* 787 (124 S. E. 813) ; *Information Buying Co.* v. *Morgan,* 39 *Ga. App.* 292 (147 S. E. 128). A suit in assumpsit lies for money had and received. *Whitehead* v. *Peck,* 1 *Ga.* 140, 145; *Cragg* v. *Arendale,* 113 *Ga.* 181 (38 S. E. 399).

Construing the petition either as one alleging a cause of action ex contractu on the defendant's contract, whether express or implied, to pay to the plaintiff money collected, or as one alleging a cause of action ex delicto for a conversion by the defendant to his own use of property in his possession belonging to the plaintiff, the verdict and judgment for the plaintiff, in the sum sued

for, was supported by the law and the evidence, and should be sustained, unless a finding that the debt was dischargeable in bankruptcy was demanded.

■ Section 17 of the national bankruptcy act of 1898 as amended provides that "a discharge in bankruptcy shall release a bankrupt from all his provable debts except such as [among others] are liabilities for obtaining property by false pretenses or false representations, or for wilful and malicious injuries to the person or property of another . . or were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity." 1 Collier on Bankruptcy, 591. Whether the debt created by the defendant's failure to turn over to the plaintiff the latter's portion of the fund after the defendant had collected it constituted a liability for the wilful and malicious injury to property and was, under the authority of *Covington* v. *Rosenbusch,* 148 *Ga.* 459 (97 S. E. 78), exempt from discharge in bankruptcy, it is not necessary to decide. The ruling in that case had reference to a situation where the assignor had, by an assignment of a chose in action, conveyed the legal title to the assignee. It was there held on the authority of McIntyre *v.* Kavanaugh, 242 U. S. 138 (37 Sup. Ct. 38, 61 L. ed. 205), that the collection of the money by the assignor from the debtor constituted a wilful and malicious injury to property within the meaning of section 17 of the national bankruptcy act of 1898 as amended, and was therefore exempt from discharge in bankruptcy. In the case here before this court the assignor, since he, and not the assignee, had the legal title to the debt assigned, had a right to collect it from the debtor. In so doing his act constituted no injury to the assignee's property. The question presented, therefore, is whether the act of the assignor, after collecting the money from the debtor and converting it to his own use, constituted such a debt as is exempt from discharge in bankruptcy.

The defendant as the assignor, when he had collected the wages or salary which he had assigned to the plaintiff, stood in the position of a trustee holding the legal title to the portion of the fund, the equitable right to which was in the plaintiff, the assignee, as the beneficiary thereof, and was under a duty to pay it over immediately to the plaintiff as the beneficiary, and upon the failure of the assignor as trustee to do this he misappropriated the money to his own use, and thereby committed a breach of the trust.

The several bankruptcy acts of the United States exempt from discharge in bankruptcy debts of one kind or another, according to the language of the different acts, created by the bankrupt while acting in a fiduciary capacity. The decisions with reference to the definition of the expression "fiduciary capacity" as used in the national bankruptcy acts of 1841 and 1898, and of the expression "fiduciary character" as used in the national bankruptcy act of 1867, are valuable in determining the meaning of this expression as contained in the national bankruptcy act of 1898. The national bankruptcy act of 1841 provided for a discharge of the bankrupt of "debts which shall not have been created in consequence of a defalcation as a public officer, or as executor, administrator, guardian, or trustee, or while acting in any other fiduciary capacity." In Chapman v. Forsyth, 2 Howard (U. S.) 202 (11 L. ed. 236), the Supreme Court of the United States had under consideration the question whether a factor who had retained the money of his principal, owed a debt created while acting in a fiduciary capacity, within the meaning of the act of 1841. The court stated that "if the act embrace such a debt, it will be difficult to limit its application. It must include all debts arising from agencies; and indeed all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act. The cases enumerated, 'the defalcation of a public officer,' 'executor,' 'administrator,' 'guardian,' or 'trustee,' are not cases of implied but special trusts, and the 'other fiduciary capacity' mentioned, must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract. A factor is not, therefore, within the act."

In Hennequin v. Clews, 111 U. S. 676 (4 Sup. Ct. 576, 28 L. ed. 565), in which it was held that a pledgee of securities for the payment of a debt, who failed to return them upon the discharge of the debt, because in the meantime he had pledged them over to another as security for his own debt, did not thereby create a debt while acting in a "fiduciary character," and which was exempt

under the bankruptcy act of 1867. The Supreme Court of the United States there followed Chapman *v.* Forsyth, supra, and approved the definition of "fiduciary capacity" therein contained, and stated that Chapman *v.* Forsyth had been approved by the highest courts of several of the states, including the Supreme Court of Massachusetts, in Hayman *v.* Pond, 7 Metc. 328, speaking through Chief Justice Shaw, who said that "we have no doubt that this [Chapman *v.* Forsyth] is a true construction of the law." In the opinion in Hennequin *v.* Clews the Supreme Court of the United States, in referring to the case there under consideration, said "it is very difficult to distinguish it, in principle, from the cases of commission merchants and factors failing to account for the proceeds of property committed to them for sale. There is no more—there is not so much—of the character of trustee, in one who holds collateral securities for a debt, as in one who receives money from the sale of his principal's property—money which belongs to his principal alone, and not to him, and which it is his duty to turn over to his principal without delay. The creditor who holds a collateral, holds it for his own benefit under contract. He is in no sense a trustee. His contract binds him to return it when its purpose as security is fulfilled; but if he fails to do so, it is only a breach of contract, and not a breach of trust."

In Upshur *v.* Briscoe, 138 U. S. 365 (11 Sup. Ct. 313, 34 L. ed. 931), the Supreme Court of the United States held that, where the bankrupt had been appointed an attorney in fact to receive a certain sum of money and to pay annually a certain sum of money as interest, to be paid according to his discretion, but under certain limitations designated, although the duties imposed were denominated as a "trust," the bankrupt, in performing these duties, was not acting in a "fiduciary character," and that the debt arising out of this relation was not exempt from bankruptcy under the bankruptcy act of 1867. The court stated that a trust in its technical sense was not created, but that the relationship was merely that of debtor and creditor, that "within the meaning of the exception in the bankruptcy act, a debt is not created by a person while acting in a 'fiduciary character' merely because it is created under circumstances in which trust or confidence is reposed in the debtor, in the popular sense of those terms." The court cited with approval Chapman *v.* Forsyth, and also cited with approval the case

of Cronan v. Cotting, 104 Mass. 245. In referring to the last case the court stated "it was held, that the provision of section 33 of the bankruptcy act of 1867, excepting from the effect of a discharge debts created by the bankrupt while acting in any fiduciary character, did not include the obligation of a creditor, to whom the debtor delivered property with directions to sell it and apply in satisfaction of the debt so much of the proceeds as might be necessary for the purpose, to pay over to the debtor the balance of the proceeds of the sale remaining after such satisfaction; but rather implied a fiduciary relation existing previously to, or independently of, the transaction from which the excepted debt arose; and that, if such an obligation constituted a fiduciary relation such as the statute contemplated, almost all pecuniary obligations, especially those implied by law, would be included in the exemption. The court said: 'The debt, in this case, arose exclusively out of a single transaction between the parties. Its creation involved no element other than that of contract. The existence of the liability did not spring from any breach of trust. The only default consisted in the non-payment of the balance due to the plaintiff, after satisfying the purpose of the pledge. The debt did not result from, but preceded, that default.' In the present case, the debt of Briscoe preceded his default, and was not created by his failure to carry out the provisions of the mandate. It is to be noted that the language of section 33 of the act of 1867 excepts debts created by the bankrupt 'while acting in any fiduciary character;' and the language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created. In this view, it was said in Cronan v. Cotting, supra; 'we are inclined to the opinion that the phrase implies a fiduciary relation existing previously to, or independently of, the particular transaction from which the debt arises. The collocation tends to favor this interpretation. If the phrase, "while acting," etc., be referred to that which immediately precedes, it implies something in the nature of a defalcation. If it be referred to the first branch of the provision, its association with fraud and embezzlement carries the implication of a debt growing out of some fraudulent misappropriation, or, at least, breach of trust.' "

In Bracken v. Milner, 104 Fed. 522, decided in 1900 by the circuit court of the western district of Missouri, that court, in a well-

considered opinion, after citing as authority Chapman v. Forsyth, 2 Howard (U. S.), 202, Cronan v. Cotting, 104 Mass. 245, Hennequin v. Clews, 111 U. S. 676, Upshur v. Briscoe, 138 U. S. 365 (supra), and other decisions, held as follows: "In the provision of Bankr. Act 1898, § 17 subd. 4, which exempts from the debts released by a discharge in bankruptcy debts created by the defalcation of the bankrupt 'while acting as an officer or in any fiduciary capacity,' the words 'fiduciary capacity' embrace only technical trusts, and not those which the law implies from the contract, nor relations merely of general trust and confidence; and one who is intrusted with money of another to be loaned on approved security, and authorized to receive payments of the interest or principal of such loans, and remit the same to the lender, does not receive such payments in a fiduciary capacity, within the meaning of the statute, but merely as an agent, and a claim against him for money so collected, and not remitted, is not within the exemption, but is one from which he is released by a discharge in bankruptcy. An agent entrusted with money by his principals, to be loaned on trust deeds or mortgages, who takes a trust deed securing such a loan to himself as trustee, becomes technically a trustee with respect to the property or its proceeds which comes into his hands through a foreclosure of the security, and his failure to pay over such proceeds to the beneficiary, in compliance with the express requirement of the deed, results in a debt created by his defalcation while acting in a 'fiduciary capacity,' within Bankr. Act 1898, § 17, subd. 4, from which he is not released by a discharge. An agent intrusted with money of his principals to be loaned on real estate security made such a loan, taking as security a trust deed to his partner as trustee. This deed he afterwards caused to be foreclosed, and bid in the property in his own name, but without paying therefor, and received a deed from the trustee. He made no report of the transaction to his principals, but subsequently conveyed the property away, and retained the proceeds. Held, that the transaction was outside of, and in violation of, his agency, and his liability to his principals resulting therefrom was a debt created by fraud, within the meaning of Bankr. Act 1898, § 17, subd. 4, from which he was not released by a discharge in bankruptcy." See also Gibson v. Gorman, 44 N. J. L. 325; Reeves v. McCracken, 69 N. J. Eq. 203 (60 Atl. 332); Lewis v. Shaw, 122 App. Div.

96 (106 N. Y. Supp. 1012); American Surety Co. *v.* Spice, 119 Md. 1 (85 Atl. 1031). As stated in the text in 7 C. J. 406: "The words 'fiduciary capacity' embrace only technical trusts and not those which the law implies from a contract or from relations merely of general trust and confidence, such as the relations between partners, principal and agent, broker, or factor or commission merchant, or depositor and depository; but the fact that money due to a cestui que trust is allowed to remain in a trustee's hands with the consent of the cestui que trust does not change the fiduciary nature of the debt itself."

While none of the above authorities, with the exception of Bracken *v.* Milner, 104 Fed. 522, adjudicate what situation constitutes a fiduciary relationship, yet, in determining what situations are not fiduciary in the sense of the several bankruptcy acts, they indicate what constitutes such a relationship.

In the following cases it was held that debts created by the conversion or misappropriation of funds by persons acting as trustees, executors, presidents of corporations, presidents and directors of banks, receivers, and other fiduciaries, were debts created by the misappropriations of persons acting in fiduciary capacities: Culp *v.* Robey (Tex.), 299 S. W. 846 (trustee); In re Messmore's Estate, 290 Pa. 107 (138 Atl. 81) (executor); In re Bloemecke, 265 Fed. 343 (president of corporation); In re Metz, 6 Fed. (2d) 962 (president of corporation); Boyd *v.* Applewhite, 121 Miss. 879 (84 So. 16) (director of bank); Floyd *v.* Layton, 172 N. C. 64 (89 S. E. 998) (president of bank); Morris *v.* Covey, 104 Ark. 226 (148 S. W. 257) (executor); Brown *v.* Hannagan, 210 Mass. 246 (96 N. E. 714) (executor); Field *v.* Howry, 132 Mich. 687 (94 N. W. 213) (receiver); In re Harper (D. C.), 133 Fed. 970, aff. 141 Fed. 626 (vice-president of bank); South Atlantic Guano Co. *v.* Childs, 211 Ala. 637 (101 So. 445) (consignee where title to money was in consignor by the contract of consignment); Delve *v.* Devere, 164 N. Y. Supp. 608, aff. 180 App. Div. 898 (167 N. Y. S. 1095) (broker entrusted with money to buy stock); Wilcox *v.* Leverett, 128 S. C. 377 (123 S. E. 101) (agent to sell fertilizer collecting the purchase money which belonged to principal); Mathieu *v.* Goldberg, 156 Fed. 541 (factor after a demand of him for return of goods by consignor); Williams *v.* Va.-Car. Chem. Co., 182 Ala. 413 (62 So. 755) (person entrusted with a note "as trustee" for

collection) ; Haggerty v. Badkin, 72 N. J. Eq. 473 (66 Atl. 420) (person entrusted by another with money in contemplation of their forming a partnership and converting it after the payor had died) : Guernsey v. Napier, 151 Wash. 318 (275 Pac. 724) (insurance agent after collecting premiums which belonged to the company).

In the case of Mott Iron Works v. Toumey, decided by the appellate division of the Supreme Court of New York in the year 1904, 94 App. Div. 216 (87 N. Y. Supp. 1020), a building contractor, in consideration of the sale and delivery to him of materials for use by him in performing his contract, gave to the person for whom he was doing the work an order to pay to the material man a sum of money for the materials and charge the money to the contractor, which order the contractor delivered to the materialman, agreeing with the latter to collect the money from the owner of the building. It was held that "the parties intended that the money represented by the order should become the property of the materialman when collected by the contractor, and that the failure of the contractor to turn over such money to the materialman constituted a misappropriation or defalcation by the contractor when acting in a fiduciary capacity, which is excepted from the effect of a discharge in bankruptcy by subdivision 4 of section 17 of the bankruptcy law." The court in the opinion stated, "it was the particular money that was represented by the order that the defendant undertook to collect and pay to the plaintiff. The order provided that the money was to be paid to the plaintiff, and was to be charged to a specific account which would be due to the defendant on the completion of his contract, against the drawee, and the defendant undertook to collect this amount specified in the draft or order, and to turn the money when collected over to the plaintiff. Upon the collection of the amount of the draft by the defendant the identical money collected would, under this agreement, be the money of the plaintiff and to which the plaintiff was entitled; and the defendant having collected that money, under his agreement with the plaintiff, as representing the plaintiff, his refusal to turn the money over to the plaintiff in accordance with his obligations was the breach of a fiduciary obligation, and his refusal to account for the money thus received as the money of the plaintiff was a misappropriation or defalcation while acting in a fiduciary capacity, which is excepted from the effect of. a dis-

charge in bankruptcy by subdivision 4 of section 17 of the bankruptcy law (30 U. S. Stat. at Large, 550)." In Kingsland v. Spalding, 3 Barb. Ch. (N. Y.) 341, decided in 1848, it was held that where money and property had come into the hands of the defendant for the use of the plaintiff, and in trust to pay an indebtedness of a third person to the plaintiff, the money and property in the hands of the defendant constituted in equity a trust fund for the payment of the debt, and the judgment recovered against the defendant by the plaintiff for the amount of the property which the defendant had thus received for the plaintiff's use, constituted a debt arising out of a fiduciary relationship, and the debt was not dischargeable by the defendant's bankruptcy. In Field v. Howry (1903) 132 Mich. 687 (supra), it was held that where a receiver of an insolvent estate loans the funds to a firm of which he is a member, he thereby misappropriates the funds while acting in a fiduciary capacity, within the meaning of section 17 of the bankruptcy act, and the debt against him created by his misappropriation is not dischargeable in bankruptcy. Inge v. Stillwell, 88 Kan. 33 (127 Pac. 527, 42 L. R. A. (N. S.) 1093, note); Pinkston v. Brewster, 14 Ala. 315; Herman v. Lynch, 26 Kan. 435 (40 Am. R. 320).

In the following cases it was stated that "fiduciary capacity," in section 17 of the national bankruptcy act of 1898, has reference to "technical" or "express trusts," and that the fiduciary relationship must have preceded the debt: Clair v. Colmes, 245 Mass. 281 (139 N. E. 519); Young v. Clark, 7 Cal. App. 194 (93 Pac. 1056); Lewis v. Shaw, 106 N. Y. Supp. 1012 (122 App. Div. 96); First National Bank v. Bamforth, 90 Vt. 75 (96 Atl. 600); Ehrhart v. Rork, 114 Ill. App. 509; Reeves v. McCracken, 69 N. J. Eq. 203 (60 Atl. 332), aff. 73 N. J. Eq. 729 (69 Atl. 247); In re Burchfield, 31 Fed. (2d) 118.

While without the debtor's consent, an assignment of a part of a debt may not constitute an equitable assignment enforceable by the assignee against the debtor (5 C. J. 925 and Georgia cases there cited), it certainly, as between the assignor and the assignee, confers upon the assignee an equitable right in the portion of the fund assigned, which the assignee can, whether in equity or in law, enforce against the assignor. "The assignment of a debt does not in equity require even the assent of the debtor in any manner

thereto, although to make it effectual for all purposes it may be important to give notice of the assignment to him." 3 Story's Equity Jurisprudence (14th ed.), § 1421. Whatever may be the assignee's rights, the assignment is nevertheless a contract by which the assignor retains the legal title to the money, and, as against himself, transfers to the assignee an equitable right in the fund which is enforceable against the assignor whenever the fund comes into his hands. The assignment is a declaration of trust by the assignor for the benefit of the assignee, and will become operative as such upon the fund whenever the assignor reduces it to possession. See Perry on Trusts (5th ed.) § 438.

That which is now recognized as a legal assignment of a chose in action was not a legal assignment at common law. At common law a chose in action was not assignable, and where an assignment was attempted, the legal title did not pass, but the assignee's right under the assignment was recognized in equity. In 2 R. C. L. 598 it is stated that "at the ancient common law a chose in action was incapable of assignment, equity at an early day assumed to recognize assignments of choses in action and other valuable rights including mere expectancies or possibilities, and things not having a potential existence, provided such assignments are fairly made, are supported by a sufficient consideration, and do not contravene any recognized rule of public policy. This gave rise to the doctrine of equitable assignments, which have been defined as executory agreements or declarations of trust, which a chancellor exercising a sound discretion will execute or not, according to the circumstances of the case." See also 5 C. J. 837. In Lord Coke's time it was declared that an equitable assignment is a declaration of trust. Coke on Littleton, 232, b, note 1. See also Lord Carteret v. Paschal, 3 P. Wms. 197. Gibson, C. J., in Pierce v. McKeehan, 3 Pa. 136 (45 Am. D. 635), said that "an equitable assignment is an executory agreement or declaration of trust." See also Hartman v. Dowdel, 1 Rawle (Pa.), 279; Bury v. Hartman, 4 S. & R. (Pa.) 175; Tritt v. Colwell, 31 Pa. 228; Ellis v. Secor, 31 Mich. 185 (18 Am. R. 178); Morrison v. Deaderick, 10 Hump. (Tenn.) 342; 2 Am. & Eng. Enc. L. (2d ed.) 893, 1014, 1095.

No formal words are necessary for the creation of a trust. It is provided in section 3728 of the Civil Code of 1910 that "when-

ever a manifest intention is exhibited that another person shall have the benefit of the property, the grantee shall be declared a trustee." This rule is applicable to express trusts. *Maxwell* v. *Hoppie, 70 Ga. 152; McCrary* v. *Clements, 95 Ga. 778 (22 S. E. 675); McCreary* v. *Gewinner, 103 Ga. 528 (29 S. E. 96)*. See Chase v. Perley, 148 Mass. 289 (19 N. E. 398); Gunter v. Janes, 9 Cal. 643.

One of the duties imposed upon a trustee, incident to the trust, is to account to the cestui que trust for the property, upon the trustee's execution of the duties of the trust. The trustee's retention of the property after the trust has become executed, and the conversion of it to his own use, is a violation of this duty, and the obligation upon him to account to the cestui que trust for a violation of this duty is created while acting in the capacity of trustee. The fact that upon the trustee's execution of all the duties incumbent upon him under the trust, the legal title to the property becomes, by statute (sections 3736 and 3737 of the Civil Code of 1910), divested from him and vested in the cestui que trust, should not alter this situation. The duty incumbent upon the trustee to deliver the property to the cestui que trust arises by reason of the fact that the trustee has executed all of his duties under the trust, and not by reason of the fact that by the statute of uses the legal title to the property has, upon the execution of the trust, become vested in the cestui que trust. The same circumstances which impose upon the trustee the duty to deliver the property to the cestui que trust, viz., the execution by the trustee of the powers under the trust, also operate under the statute to divest the legal title from the trustee and to vest it in the cestui que trust. The only change in the situation as to the status of the parties brought about as a result of the statute of uses is the vesting of the legal title in the cestui que trust coincident with the trustee's execution of the powers under the trust. Irrespective of whether, upon the execution by the trustee of his duties under the trust, the legal title to the property ipso facto becomes by the statute vested in the cestui que trust, the obligation of the trustee to account to the cestui que trust is nevertheless a debt created by the trustee while acting in his capacity as trustee.

A failure of a trustee to pay over to the cestui que trust monies belonging to him and due under the terms of the trust, consti-

tutes a misappropriation by the trustee. *Merchants Transportation Co.* v. *Moore,* 124 *Ga.* 482 (52 S. E. 802) ; *Maxwell* v. *Harrison,* 8 *Ga.* 61 (6) (52 Am. D. 385) ; *Spurlock* v. *Garner,* 38 *Ga. App.* 614 (3) (144 S. E. 819). No demand is necessary. *Merchants Transportation Co.* v. *Moore,* supra. Whether the plaintiff's action is ex contractu or ex delicto, the act of the defendant in refusing to pay over the money due the plaintiff which the defendant had collected, was nevertheless a misappropriation by the defendant while acting in a fiduciary capacity.

In determining the question as to whether a debt arising out of a fiduciary relationship is dischargeable, or exempt from discharge, in bankruptcy, there seems to be a distinction between a debt which is created by the transaction which creates the fiduciary relationship, and a debt which arises out of a fiduciary relationship already in existence at the creation of the debt. It seems that debts of the latter character, and not of the former, are exempt from discharge in bankruptcy. Cronan *v.* Cotting, 104 Mass. 245 (supra) ; Upshur *v.* Briscoe, 138 U. S. 365, 378 (supra) ; Bloomingdale *v.* Dreher, 31 Fed. (2d) 93.

The fiduciary character of the defendant was created independently of the transaction out of which his indebtedness to the plaintiff arose. It was created either when the defendant assigned a portion of his salary to the plaintiff or when he afterwards collected it and obtained possession of the money. The indebtedness arose afterwards, and arose by virtue of the defendant's failure to pay over the money to the plaintiff and retaining it for his own use.

The debt, therefore, was created while the defendant was acting in the fiduciary capacity of a technical trustee created under an express trust, the trust having been declared in writing by the defendant, the holder of both the legal and equitable title to a chose in action, by an assignment conveying to the plaintiff all the defendant's right and title in and to a portion of the debt represented by the chose in action, the legal result of which, in the absence of the assent to the assignment by the debtor, conveyed to the plaintiff only an equitable title in the chose in action to the extent of the amount of the debt assigned, leaving the legal title to the chose in action in its entirety in the defendant, who, as respects the portion of the debt assigned, was a trustee for the

plaintiff to collect and reduce to his own possession the portion of the fund belonging to the plaintiff, and to pay it over to the plaintiff.

The words "fiduciary capacity," as used in section 17 of the bankruptcy act of 1898, extend back and qualify "fraud," "embezzlement" and "misappropriation," as well as "defalcation." Crawford v. Burke, 195 U. S. 176 (25 Sup. Ct. 9, 49 L. ed. 147); Tindle v. Birkett, 205 U. S. 183 (27 Sup. Ct. 493, 51 L. ed. 762). Any debt, therefore, which the bankrupt created while acting in a fiduciary capacity, is exempt from discharge in bankruptcy, where it was created either by his fraud, embezzlement, misappropriation, or defalcation. The decisions in Glasco v. Cooper, 17 Ga. App. 690 (87 S. E. 1095), and Stovall v. Coker, 18 Ga. App. 126 (88 S. E. 907), holding that a debt created by the act of the assignor in collecting from the debtor the fund which had already been assigned to another did not arise by virtue of the assignor's acting in a fiduciary capacity, had no reference to a situation where the assignor at the time acted in the capacity of a technical trustee holding legal title to the fund collected. In each of these cases the assignee brought suit against the assignor for collecting and converting the fund. In neither of them were the questions determined elaborately treated. Both cases were disposed of by short syllabi. In Stovall v. Coker, the court followed Glasco v. Cooper. In each case the assignors assigned so many dollars "on my account for salary as wages" in one case, and so many "dollars of my salary" in the other case. From an inspection of the records in these cases it appears that the evidence in each case was silent as to the total amount of wages earned. The language of each assignment is perfectly consistent with the assignment of an entire debt, conveying the legal title thereto to the assignee. In Covington v. Rosenbusch, 148 Ga. 459 (supra), where the total amount which the assignor had earned during the period covered by the assignment did not appear, but where the assignment was of "$62.00 of my salary," it was held that the assignor had sold, transferred, and assigned "his title and right to possession of a stipulated amount of salary due him by his employer, . ." and that "the instrument of transfer [was] an assignment of title." See also this case cited in Spurlock v. Garner, 38 Ga. App. 614 (144 S. E. 819).

The assignment referred to in *Glasco* v. *Cooper* and *Stovall* v. *Coker,* prima facie at least constituted assignments by which each assignor conveyed the legal title to the assignee. In neither of these two cases was any differentiation made between an assignment conveying the legal title to the assignee and an assignment of only an equitable interest to him, reserving the legal title in the assignor. It clearly, therefore, does not appear that either of these decisions was based upon the theory that the assignor held the legal title to the fund assigned, with the right to collect it for the assignee's benefit and to account to him. Neither case is authority for the proposition that the assignor, as a *trustee,* was not a fiduciary in the sense of sec. 17 of the national bankruptcy act. On the other hand, if the assignors had, by the assignment, parted with the legal title, they were mere intermeddlers, with no right to touch the funds after the debts had been assigned, and necessarily stood in no fiduciary relationship to the assignees.

We therefore conclude that the obligation of the defendant constitutes a debt created by his misappropriation while acting in a fiduciary capacity, and is, under section 17 of the national bankruptcy act of 1898 as amended, exempt from discharge in bankruptcy.

■ The act of the defendant in making an assignment of past-earned wages for a specified period, and his admission in the plea that, but for certain defenses interposed, he is indebted to the plaintiff in the amount sued for, which is equivalent to the amount of the wages assigned, are sufficient to authorize the finding that at the time of the assignment there was due the defendant from his employer wages in the amount indicated in the assignment. The foregoing evidence, and the evidence to the effect that the assignment was a bona fide sale of the defendant's wages and was not a device to evade the laws against usury, and the evidence to the effect that the defendant had collected all the wages due him by his employer, and had not paid to the plaintiff any portion of the money so collected, are sufficient to authorize the inference that the defendant is indebted to the plaintiff in the amount sued for.

The judge of the municipal court of Macon did not err in finding against the defendant's plea in bankruptcy, and in finding for the plaintiff in the amount sued for; and the judge of the superior

court therefore did not err in dismissing the defendant's petition for certiorari and thereby affirming the judgment.

   *Judgment affirmed. Jenkins, P. J., and Bell, J., concur.*

ON MOTION FOR REHEARING.

 ■ The plaintiff in error, in a motion for rehearing, insists that the verdict and judgment rendered against him in the trial court were unsupported by the evidence and were contrary to law upon the ground, among others, that it does not appear from the evidence that the plaintiff in the trial court, Bibb Brokerage Corporation, had obtained a license to do business as lender of money or buyer of salaries or wages, as required by law. While the evidence is silent as to whether the plaintiff had obtained the required license, it was not alleged in the petition that the plaintiff had obtained such license. There was no demurrer to the petition upon the ground of insufficiency in this respect. Nor did the defendant by a plea set up as a defense the failure of the plaintiff to obtain the required license. There is therefore no merit in the contention of the plaintiff in error. As the above question was not raised in the record, it was not referred to in the original opinion. The other grounds of the motion for a rehearing are without merit. They are treated in the opinion of the court.

   *Rehearing denied. Jenkins, P. J., and Bell, J., concur.*